UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DEBRA JONES-CRUZ,

                              Plaintiff,                              **ORDER**

            - against -                                               19 Civ. 6910 (PGG)

VICTOR RIVERA, individually and in his
capacity as VP Local 1199 SEIU; LOCAL
1199 SEIU; and BROOKDALE
UNIVERSITY HOSPITAL MEDICAL
CENTER,
                              Defendants.

PAUL G. GARDEPHE, U.S.D.J.:

        Plaintiff Debra Jones-Cruz is a physician assistant at Defendant Brookdale

University Hospital Medical Center (the "Hospital"), where she is a member of Defendant Local

1199 SEIU (the "Union").  In this action, Plaintiff alleges that the Union and its vice president,

Victor Rivera (together, the "Union Defendants"), and the Hospital, discriminated against her on

the basis of her race, in violation of 42 U.S.C. § 1981; the New York State Human Rights Law

(the "NYSHRL"), N.Y. Exec. Law § 296(1)(c); and the New York City Human Rights Law (the

"NYCHRL"), N.Y.C. Admin. Code § 8-107(1)(c).  Plaintiff also claims that Defendant Rivera

tortiously interfered with her employment contract.  (Cmplt. (Dkt. No. 7))  Jurisdiction is

premised on federal question jurisdiction pursuant to 28 U.S.C. § 1331.  (Id. ¶1)

        The Union Defendants and the Hospital have moved to dismiss under Fed. R. Civ.

P. 12(b)(6) for failure to state a claim.  (Dkt. Nos. 40, 34)  For the reasons stated below,

Defendants' motions to dismiss will be granted.

## BACKGROUND

For the past ten years, Plaintiff has worked as a physician assistant in the Hospital's Department of Neurology.  (Cmplt. (Dkt. No. 7) ¶¶ 5-6, 10)  Plaintiff is responsible for "administering drugs on stroke patients, responding to stroke codes, neuro assessments, and attending to neurological emergencies."  (Id. ¶ 11)  Three other physician assistants work in the Neurology Department.  All of the physician assistants report to the Supervising Neurologist and all work at both the Hospital and two adjacent nursing homes.  (Id. ¶¶ 12-14)  Plaintiff is Black; two of the other physician assistants are White; and one of the physician assistants is Indian.  (Id. ¶ 15)

Plaintiff and her physician assistant colleagues are represented by the Union.  (Id. ¶ 8)

Plaintiff's allegations regarding discriminatory treatment arise from the four physician assistants' work schedules.  According to Plaintiff, the night shift is preferable:  "the number of emergencies and [stroke] code[s] are not as high and the modalities of the job do not involve[] as much stress compared to the [day] shift."  (Id. ¶ 34)  The "[n]ight shift also pays more" than the day shift.  (Id.)  Plaintiff contends that – due to Defendant Rivera's intervention – only White physician assistants are assigned to night shifts, while "minority Physician Assistants" such as Plaintiff "have all now been confined to the day shift."  (Id. ¶¶ 34-36, 38)

When the Hospital first hired Plaintiff, she worked three days a week, twelve hours a day, and one weekend day once a month.  There was no night shift.  (Id. ¶¶ 16-18)

At some point not specified in the Complaint, New York State began requiring stroke centers such as that operated at the Hospital to offer 24-hour service for stroke victims. Accordingly, the Neurology Department adjusted work schedules to provide for physician

assistant coverage 24 hours a day, seven days a week.  (Id. ¶¶ 19-20)  The Chair of the Neurology Department asked Plaintiff to create a work schedule "to incorporate day and night shifts to meet departmental clinical needs."  (Id. ¶ 23)  In October 2018, Plaintiff was chosen – "based on her seniority and experience" – to manage the work schedule for the Neurology Department physician assistants.  (Id. ¶ 25)

       According to Plaintiff, by February 2019, the two White physician assistants became "antagonistic" and "defian[t]" towards Plaintiff in connection with their work schedules, leading to "internal disagreement" in the department.  The Neurology Department administrator then assumed control over the physician assistants' work schedules.  (Id. ¶¶ 26-27)  Among other changes, the department administrator scheduled all physician assistants to work every other weekend.  (Id. ¶28)

       In April 2019, all of the Neurology Department physician assistants met with the Hospital's management to discuss a new scheduling system.  The Hospital and the physician assistants agreed that "the physician assistants would self-schedule" in order of seniority, and would rotate overseeing the master work schedule on a monthly basis.  (Id. ¶¶ 29-31, 39)

       The Complaint alleges that after this agreement was reached, one of the White physician assistants asked Defendant Rivera to intervene with the Hospital's management to help the White physician assistants obtain a more favorable work schedule.[1]  (Id. ¶¶ 32-33, 35) Rivera is White Hispanic, and is vice president of the Union.  (Id. ¶¶ 7, 32)  Rivera used his position in the Union to obtain a meeting with the Chair of the Neurology Department and William Bilfuco – part of the Hospital's management – to address the physician assistants' work

---

[1]  The Complaint later asserts that Rivera intervened with the Hospital regarding work schedules "without any invitation from the staff so as to accomplish his desire to favor his preferred White constituents."  (Id. ¶ 50)

schedule.  (Id. ¶¶ 33-37)  Although the Chair of the Neurology Department "requested . . . for Plaintiff to work nights," and Bilfuco "indicated he would follow seniority rule and give Plaintiff preference to select [her] schedule as required by policy," Rivera nonetheless changed the work schedule to benefit White physician assistants and disadvantage non-White physician assistants, "who have all now been confined to the day shift."  (Id. ¶¶ 36-38)

In addition to "favoring and allowing the schedule preferences of White Physician Assistants," Rivera "spoke to Plaintiff in a condescending and insulting manner . . . when he was challenged on his pro[-]White policy," and "isolated" her with his "challenges and antagonistic attitude."  (Id. ¶¶ 41-43)  As a result, Plaintiff suffered "physical stress, heart palpitations, emotional distress and dizziness whenever she went to work."  (Id. ¶ 44)

In response to Rivera's scheduling change, Hospital "staff draft[ed] a petition to condemn [his] bigoted interference in the scheduling process for [p]hysician [a]ssistants in the Neurology Department."  (Id. ¶ 45)  The Complaint alleges that Hospital management told Plaintiff that "Rivera . . . insisted on changing the schedules" to benefit "his preferred constituency, the White Physician Assistants," and that management acquiesced when Rivera injected race into the scheduling process.  (Id. ¶¶ 46-49)

The Complaint was filed on July 24, 2019,[2] and alleges that all Defendants discriminated against Plaintiff on the basis of her race, in violation of 42 U.S.C. § 1981, the NYSHRL, and the NYCHRL.  (Id. ¶¶ 51-58)  The Complaint further alleges that Defendant Rivera committed tortious interference with contract.  (Id. ¶¶ 59-60)

---

[2]  The Complaint (Dkt. No. 1) was filed on July 24, 2019, but was rejected for a filing deficiency. It was refiled on July 25, 2019.  See Dkt. No. 7.

The Union Defendants and the Hospital have moved to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim.  (Dkt. Nos. 34, 40)

## DISCUSSION

### I.      LEGAL STANDARDS

"To survive a motion to dismiss [pursuant to Fed. R. Civ. P. 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "In considering a motion to dismiss[,] . . . the court is to accept as true all facts alleged in the complaint," Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007) (citing Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 87 (2d Cir. 2002)), and must "draw all reasonable inferences in favor of the plaintiff." Id. (citing Fernandez v. Chertoff, 471 F.3d 45, 51 (2d Cir. 2006)).

A complaint is inadequately pled "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement,'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557), and does not provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." Port Dock & Stone Corp. v. Oldcastle Northeast, Inc., 507 F.3d 117, 121 (2d Cir. 2007) (citing Twombly, 550 U.S. at 555).

"[A] plaintiff alleging employment discrimination or retaliation is not required to plead facts sufficient to establish a prima facie case," however.  Krasner v. HSH Nordbank AG, 680 F. Supp. 2d 502, 512 (S.D.N.Y. 2010) (citing Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508, 515 (2002) (addressing motion to dismiss standard for Title VII discrimination claim)). Instead, as the Swierkiewicz Court explained, the "ordinary rules for assessing the sufficiency of a complaint" under Fed. R. Civ. P. 8(a)'s notice pleading standard apply.  Swierkiewicz, 534 U.S. at 511.

Under this standard, a plaintiff is required only to set forth a "short and plain statement of the claim," Fed. R. Civ. P. 8(a), with sufficient factual "heft 'to sho[w] that the pleader is entitled to relief.'"  Twombly, 550 U.S. at 557 (alteration in Twombly) (quoting Fed. R. Civ. P. 8(a)).  To survive a motion to dismiss, plaintiff's "[f]actual allegations must be enough to raise a right of relief above the speculative level," id. at 555, and present claims that are "plausible on [their] face."  Id. at 570.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678.

"Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (internal quotation marks omitted) (quoting Twombly, 550 U.S. at 557).  And where "the allegations in a complaint, however true, could not raise a claim of entitlement to relief," Twombly, 550 U.S. at 558, or where a plaintiff has "not nudged [her] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed."  Id. at 570.

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."  DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) (citing Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002); Hayden v. County of Nassau, 180 F.3d 42, 54 (2d Cir. 1999)).  For documents to be incorporated by reference, "the complaint must make 'a clear, definite and substantial reference to the documents.'"  DeLuca v. AccessIT Grp., Inc., 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010) (quoting Helprin v. Harcourt, Inc., 277 F. Supp. 2d 327, 330-31 (S.D.N.Y. 2003)).  "[L]imited quotation" of a document, Goldman v. Belden, 754 F.2d 1059,

1066 (2d Cir. 1985), or a mere passing reference to a document outside of the complaint does not incorporate the document into the complaint.  See, e.g., Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004) ("Limited quotation from or reference to documents that may constitute relevant evidence in a case is not enough to incorporate those documents, wholesale, into the complaint."); Cosmas v. Hassett, 886 F.2d 8, 13 (2d Cir. 1989) (although the amended complaint "discussed [certain] documents and presented short quotations from them[,]" these passing references and "brief[ ] excerpt[s]" are insufficient for incorporation by reference).

   "Where a document is not incorporated by reference, the court may never[the]less consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint."  DiFolco, 622 F.3d at 111 (quoting Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006)).  For a document "[t]o be integral to a complaint, the plaintiff must have (1) 'actual notice' of the extraneous information and (2) 'relied upon th[e] document[ ] in framing the complaint.'"  DeLuca, 695 F. Supp. 2d at 60 (quoting Chambers, 282 F.3d at 153).  A document that is not mentioned in a complaint is not integral to that complaint. See Smith v. Hogan, 794 F.3d 249, 255 (2d Cir. 2015) (document "never . . . mentioned" in complaint not integral to complaint); Baldessarre v. Monroe-Woodbury Cent. Sch. Dist., 820 F. Supp. 2d 490, 500 (S.D.N.Y. 2011) ("[B]ecause the Amended Complaint does not mention" the document "or its terms or conditions[,]" it is neither incorporated by reference nor integral to the complaint.)  Moreover, "even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document," and there cannot be any "material disputed issues of fact regarding the relevance of the document." DiFolco, 622 F.3d at 111 (quoting Faulkner v. Beer, 463 F.3d 130, 134 (2d Cir. 2006)).

II.   **ANALYSIS**

    A.   **Defendants' Arguments for Dismissal**

        The Union Defendants argue that Plaintiff's state and city law claims – including the discrimination and tortious interference claims – are preempted by Section 301 of the Labor Management Relations Act ("LMRA") because resolution of the claims requires interpretation of the Union's collective bargaining agreement ("CBA").  (Union Br. (Dkt. No. 41) at 16-20[3])  The Union Defendants further contend that Plaintiff's federal, state, and city law discrimination claims fail because she has not adequately pled discriminatory intent.  (Id. at 11-15, 20-21)  Finally, the Union Defendants argue that Plaintiff has not alleged facts sufficient to state a claim for tortious interference with contract.  (Id. at 21-23)

        The Hospital argues that Plaintiff's discrimination claims fail because of her failure to adequately allege an adverse employment action and discriminatory intent.  (Hosp. Br. (Dkt. No. 35))  The Hospital further contends that certain damages Plaintiff seeks are not available under the NYSHRL.  (Id. at 21)

    B.   **Whether Plaintiff's State and City Law Claims
        Are Preempted by Section 301 of the LMRA**

        Defendants contend that Plaintiff's state and city law claims are preempted by Section 301 of the LMRA, 29 U.S.C. § 185,[4] because they require interpretation of the CBA between the Union and the Hospital.  (Union Br. (Dkt. No. 41) at 16-20; Hosp. Br. (Dkt. No. 35) at 11 n.3)

---

[3]  All citations to page numbers refer to the pagination generated by this District's Electronic Case Files ("ECF") system.

[4]  Section 301(a) of the LMRA provides that "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."  29 U.S.C. § 185(a).

1.      **Applicable Law**

"[I]f the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law . . . is pre-empted and federal labor-law principles – necessarily uniform throughout the Nation – must be employed to resolve the dispute." Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 405-06, 413 (1988) ("[W]e hold that an application of state law is pre-empted by § 301 of the Labor Management Relations Act of 1947 only if such application requires the interpretation of a collective-bargaining agreement."). Accordingly, "'where the resolution of a state-law claim depends on an interpretation of the collective-bargaining agreement, the claim is pre-empted.'" Wynn v. AC Rochester, 273 F.3d 153, 157 (2d Cir. 2001) (quoting Foy v. Pratt & Whitney Group, 127 F.3d 229, 233 (2d Cir.1997)) (emphasis in Foy).

The mere reference to a collective bargaining agreement in a complaint is not sufficient to find preemption, however. Similarly, "'the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished.'" Id. at 157 (quoting Foy, 127 F.3d at 233). "'The boundary between claims requiring "interpretation" of a CBA and ones that merely require such an agreement to be "consulted" is elusive[, however.]'" Whitehurst v. 1199 SEIU United Healthcare Workers E., 928 F.3d 201, 206-07 (2d Cir. 2019) (quoting Wynn, 273 F.3d at 158).

"[T]he starting point in determining whether a claim is preempted by Section 301 is consideration of the elements of plaintiff's stated claim. The court then considers whether adjudication of any element of that claim requires interpretation of the parties' collective bargaining agreement." Zuckerman v. Volume Servs. Am., Inc., 304 F. Supp. 2d 365, 370

(E.D.N.Y. 2004) (citing <u>Foy</u>, 127 F.3d at 233); <u>see also</u> <u>Bryant v. Verizon Commc'ns, Inc.</u>, 550 F. Supp. 2d 513, 527 (S.D.N.Y. 2008).

**2.    Whether the Collective Bargaining Agreement May Be
<u>Considered in Resolving Defendants' Motions to Dismiss</u>**

In connection with their motion to dismiss, the Union Defendants have submitted excerpts from the CBA between the League of Voluntary Hospitals and Homes of New York – of which the Hospital is a part – and the Union.  (<u>See</u> Lehman Aff. (Dkt No. 42-1))  It is undisputed that, pursuant to this CBA, the Union represents Plaintiff and her physician assistant colleagues who are employed at the Hospital.  (Cmplt. (Dkt. No. 7) ¶ 8)  The Union Defendants contend that Plaintiff's claims implicate CBA provisions that address shift differentials and seniority rules.  (Union Br. (Dkt. No. 41) at 17-18 (citing Cmplt. (Dkt. No. 7) ¶¶ 34, 37, 39))

As an initial matter, the Court notes that the Complaint does not quote from or overtly reference the existence of the CBA.  Plaintiff cannot obviate review of the CBA by "careful avoidance of mentioning [it] in the complaint[, however]."  <u>Levy v. Verizon Info. Servs., Inc.</u>, 498 F. Supp. 2d 586, 594 (E.D.N.Y. 2007).  To the extent Plaintiff's claims of discrimination are premised on her right to select her schedule based on the seniority she has accrued (<u>see</u>, <u>e.g.</u>, Cmplt. (Dkt. No. 7) ¶¶ 25, 35, 37, 39, 42), "the CBA provides the factual premise" for Plaintiff's causes of action.  <u>Stolarik v. New York Times Co.</u>, 323 F. Supp. 3d 523, 538 (S.D.N.Y. 2018).

Given that (1) the Complaint pleads that the Union represents Plaintiff and her fellow physician assistants in connection with their employment at the Hospital; (2) Plaintiff asserts in the Complaint that Defendants have violated her right to select her work schedule based on her seniority (<u>see</u> Cmplt. (Dkt. No. 7) ¶¶ 8, 25, 35, 37, 39, 42); and (3) the CBA excerpts submitted by the Union Defendants indicate that the CBA governs the determination of

employee seniority, defines shift differentials, and requires that changes to shift assignments be made in accordance with seniority (Lehman Aff. (Dkt No. 42-1) at 7-13), the Court concludes that Plaintiff had actual notice of and relied on these CBA provisions in drafting the Complaint. Accordingly, this Court will consider the CBA excerpts submitted by the Union Defendants in resolving Defendants' motions to dismiss.

### 3.      Whether Plaintiff's State and City Law Discrimination Claims Are Preempted

The Union Defendants contend that Plaintiff's state and city law discrimination claims are preempted by LMRA Section 301, because they will require interpretation of three aspects of the CBA:  (1) "whether Plaintiff had a contractual right to work the night shift (and therefore receive shift differential)" under the CBA; (2) the "Seniority provision which, inter alia, defines seniority and sets forth its application"; and (3) the provision that the CBA "supersedes any Employer policy or rule."  (Union Br. (Dkt. No. 41) at 19)

The Hospital similarly argues that Plaintiff's state and city law claims are preempted, asserting that the claims will turn on the "text and meaning" of the "provisions [of the CBA that] dictate which bargaining unit members can work which shifts, how shifts can be re-assigned, who has the authority to make such decisions, and how seniority influences same." (Hospital Br. (Dkt. No. 35) at 11 n.3)

Plaintiff counters that "this case is not about the [CBA]."  (Pltf. Br. (Dkt. No. 38) at 18)  According to Plaintiff, physician assistant work schedules are determined pursuant to a "seniority policy" and "schedule selection system."  (Cmplt. (Dkt. No. 7) ¶¶ 37, 39-40)  Plaintiff further contends that, in any event, the Court "need not reach into the [CBA]," because Plaintiff's core contention is that "Rivera intentionally engaged in discrimination . . . to impose a schedule that favors White [physician assistants]."  (Pltf. Br. (Dkt. No. 38) at 18)  According to

11

Plaintiff, "[t]he alleged discrimination here has nothing to do with the union contract, but a lot to do with a union official disrupting departmental policy in an illegal way." (Id. at 19)

As discussed above, however, seniority at the Hospital is determined by the CBA,[5] and seniority is central to Plaintiff's claims. (Cmplt. (Dkt. No. 7) ¶¶ 35 ("favor[ing] White employees at the expense of . . . more senior non[-]White employees was not right and is illegal"); 37, 39 ("seniority rule" required Plaintiff to have schedule selection preference)). "Courts generally hold that where a state-law discrimination claim turns on application of a collective bargaining agreement's seniority provisions, the claim is preempted by Section 301 of the LMRA." Morrissey v. Verizon Commc'ns Inc., No. 10 CIV. 6115 PGG, 2011 WL 2671742, at *4 (S.D.N.Y. July 7, 2011) (collecting cases).

Based on the current record, however, this Court cannot find that Plaintiff's state and city law discrimination claims will "turn on" application of the CBA's seniority provisions. The Complaint pleads that Plaintiff is senior to the two White physician assistants (see Cmplt. (Dkt. No. 7) ¶¶ 15, 20-22, 24-25), and it does not appear that Defendants will challenge that assertion. Defendants likewise "do[] not explain what there is to interpret from the CBA" and how interpretation of the CBA might impact the analysis of Plaintiff's discrimination claims. Kaye v. Orange Reg'l Med. Ctr., 975 F. Supp. 2d 412, 425 (S.D.N.Y. 2013). See also Whitehurst, 928 F.3d at 206-07 ("That a court may need to consult the CBA in resolving the state law claim . . . does not subject that claim to preemption by § 301." (emphasis omitted)).

In sum, while the factfinder might need to consult the CBA to confirm the Complaint's allegation that Plaintiff is senior to her two White colleagues, Plaintiff's claims do

---

[5] Although the Complaint avoids referencing the seniority provisions of the CBA – vaguely referring instead to a "seniority rule" and a "seniority policy" – the Complaint pleads no facts suggesting a source of the "seniority rule" and "seniority policy" other than the CBA.

not, at bottom, "involve a union member's dispute about whether the union followed the proper procedures prescribed by the collective-bargaining agreement . . . ."  Langford v. Int'l Union of Operating Eng'rs, Local 30, 765 F. Supp. 2d 486, 506 (S.D.N.Y. 2011).  Instead, the core of Plaintiff's state and city law discrimination claims is that the Union Defendants discriminated against her – as to her work schedule – by favoring White colleagues over her.  "In other words, Plaintiff's State and City Human Rights Law claims exist independently of any potential claims that Plaintiff might have been able to assert for breach of the CBA itself."  Germosen v. ABM Indus. Corp., No. 13-CV-1978 (ER), 2014 WL 4211347, at *5 (S.D.N.Y. Aug. 26, 2014); see also Skelton v. Int'l Union of Operating Eng'rs Local 14-14B, No. 18-CV-8442 (VSB), 2019 WL 4784763, at *4 (S.D.N.Y. Sept. 30, 2019) (claims that union discriminated against plaintiff on the basis of race by, among other things, "assign[ing] him to less desirable jobs than his white counterparts," were not preempted by Section 301).

The Court concludes that Plaintiff's state and city law discrimination claims are not preempted by LMRA Section 301.

### 4.     Whether Plaintiff's Tortious Interference with Contract Claim is Preempted

The Union Defendants contend that Plaintiff's tortious interference with contract claim is preempted by LMRA Section 301.  (Union Br. (Dkt. No. 41) at 19)

"A prima facie claim of tortious interference with contract requires five elements: '[1] the existence of a valid contract between the plaintiff and a third party, [2] defendant's knowledge of that contract, [3] defendant's intentional procurement of the third-party's breach of the contract without justification, [4] actual breach of the contract, and [5] damages resulting therefrom.'"  Spiegel v. Bekowies, No. 14 CIV 3045 LGS, 2015 WL 3429107, at *3 (S.D.N.Y. May 27, 2015), aff'd, 669 F. App'x 38 (2d Cir. 2016) (quoting Lama Holding Co. v. Smith

Barney Inc., 88 N.Y.2d 413, 424 (1996)).  "'[T]here is no way to adjudicate breach of contract absent interpretation of the underlying contract.'"  Id. (quoting Semper v. N.Y. Methodist Hosp., 786 F. Supp. 2d 566, 583 (E.D.N.Y. 2011) (citing Baylis v. Marriott Corp., 906 F.2d 874, 877 (2d Cir.1990))).  For that reason, courts in this Circuit have found that tortious interference claims based on a collective bargaining agreement are preempted.  Meier v. Premier Wine & Spirits, Inc., 371 F. Supp. 2d 239, 246 (E.D.N.Y. 2005) (claim based on tortious interference with collective bargaining agreement preempted by LMRA Section 301); Gray v. Grove Mfg. Co., 971 F. Supp. 78, 84-85 (E.D.N.Y. 1997) (same); Ferrara v. Leticia, Inc., No. 09-CV-3032 RRM CLP, 2012 WL 4344164, at *7 (E.D.N.Y. Sept. 21, 2012) (same).

As discussed below, the Complaint pleads no facts concerning Plaintiff's alleged "employment contract" with the Hospital, and that claim will be dismissed for failure to state a claim.  Because Plaintiff has provided no facts concerning her alleged "employment contract" with the Hospital (see Cmplt. (Dkt. No. 7) ¶ 60), this Court cannot find that her tortious interference claim is preempted by LMRA Section 301.

*     *     *     *

To the extent that Defendants' motions to dismiss are premised on the argument that Plaintiff's state and city law discrimination claims, and her tortious interference claim, are preempted by LMRA Section 301, the motions will be denied.

C.     **Whether the Complaint States a Claim for Employment Discrimination**

Defendants contend that the Complaint fails to state a claim for race discrimination under federal, state or city law.  (Union Br. (Dkt. No. 41) at 11-15); Hospital Br. (Dkt. No. 35) at 11-21)

### 1.    Section 1981 and NYSHRL Claims

#### a.    Legal Standards

Discrimination claims under Section 1981 and the NYSHRL are analyzed under the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  Tolbert v. Smith, 790 F.3d 427, 434 (2d Cir. 2015) (analyzing Section 1981 and NYSHRL claims together).[6]  "The prima facie case under McDonnell Douglas, however, is an evidentiary standard, not a pleading requirement."  Swierkiewicz, 534 U.S. at 510.  "[A]t the initial stage of the litigation" in a Section 1981 case, "the plaintiff does not need substantial evidence of discriminatory intent."  Littlejohn v. City of N.Y., 795 F.3d 297, 311 (2d Cir. 2015). Rather, to establish a prima facie case of race discrimination, a plaintiff must show that:  (1) she belongs to a protected class, (2) she was qualified for the position, (3) she suffered an adverse employment action, and (4) she "has . . . some minimal evidence suggesting an inference that [her] employer acted with discriminatory motivation."  Id. at 307.

#### b.    Application

Although Defendants acknowledge that Plaintiff is Black and that she is qualified for her position, they contend that she has not plead facts sufficient to (1) demonstrate that she suffered an adverse employment action; or (2) raise an inference of discriminatory intent.  (See Hospital Br. (Dkt. No. 35) 12-19; Union Br. (Dkt. No. 41) 13-15)

To allege an adverse employment action for purposes of a discrimination claim, a plaintiff must plead facts demonstrating that she suffered "'a materially adverse change in the

---

[6]  "In August 2019, the NYSHRL was amended in several ways, but the events underlying this case [and the filing of the Complaint] preceded those amendments."  Maynard v. Montefiore Med. Ctr., No. 18-CV-8877 (LAP), 2021 WL 396700, at *5 n.7 (S.D.N.Y. Feb. 4, 2021) (internal quotations and citation omitted).

terms and conditions of employment.'" Morgan v. NYS Atty. Gen.'s Off., No. 11 CIV. 9389 (PKC) (JLC), 2013 WL 491525, at *5 (S.D.N.Y. Feb. 8, 2013) (quoting Galabya v. New York City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000))  "'To be materially adverse a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities.'" Id. (quoting Galabya, 202 F.3d at 640).  "Examples of materially adverse employment actions include 'termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation.'" Morales v. Div. of Youth & Fam. Just., No. 14-CV-7253 (JGK), 2019 WL 3430168, at *4 (S.D.N.Y. July 30, 2019) (quoting Sanders v N.Y.C. Human Res. Admin., 361 F.3d 749, 755 (2d Cir. 2004)).

Here, Plaintiff contends that Defendants discriminated against her by assigning only White physician assistants to the night shift and by relegating her to solely day shifts. (Cmplt. (Dkt. No. 7) ¶¶ 34-36, 38)  As discussed above, Plaintiff contends that the night shift is more desirable, because it offers a pay differential, fewer emergencies, and less stress.  (Id. ¶¶ 34, 38)

A less desirable work schedule, without more, does not constitute a materially adverse change in the terms and conditions of employment.  Henry v. NYC Health & Hosp. Corp., 18 F. Supp. 3d 396, 406–07 (S.D.N.Y. 2014); Smalls v. Allstate Ins. Co., 396 F. Supp. 2d 364, 371 (S.D.N.Y. 2005) ("[R]eceiving unfavorable schedules or work assignments . . . do[es] not rise to the level of [an] adverse employment action . . . because [it does] not have a material impact on the terms and conditions of Plaintiffs employment.").  Indeed, a plaintiff who argues that a scheduling change constitutes a materially adverse change to the terms and conditions of employment must provide evidence of "extraordinary circumstances." Simon v. City of New

16

York, No. 17 CIV. 9575 (DAB), 2019 WL 916767, at *7 (S.D.N.Y. Feb. 14, 2019) (citing

DiBrino v. Dept. of Veteran's Aff., 118 F. App'x. 533, 535 (2d Cir. 2004)).  Plaintiff has offered

no such evidence here.

Although Plaintiff asserts that the night shift offers higher pay – because of "night

differentials" (see Cmplt. (Dkt. No. 7) ¶ 34) – the Complaint does not allege that Plaintiff lost

income as a result of the scheduling change.  Cf. Henry, 18 F. Supp. 3d at 406 ("[Plaintiff] fails

to allege facts plausibly indicating that she suffered any material detriment as a result of being

denied overtime, such as opportunities for career advancement.  Her conclusory allegation that

she was denied overtime, without more, is insufficient to substantiate an adverse employment

action."); Albuja v. Nat'l Broad. Co. Universal, Inc., 851 F. Supp. 2d 599, 609 (S.D.N.Y. 2012)

(in summary judgment context, held that plaintiff's complaint about undesirable night shift

assignment was not sufficient to demonstrate an adverse employment action, because plaintiff

"has not asserted that working night shifts caused any diminution in his compensation or job

responsibilities").  The Court concludes that the Complaint does not plead facts sufficient to

make out an adverse employment action.

The Complaint also does not plead facts sufficient to demonstrate discriminatory

intent.  "'An inference of discrimination can arise from circumstances including . . . more

favorable treatment of employees not in the protected group.'  However, '[a] plaintiff relying on

disparate treatment evidence must show she was similarly situated in all material respects to the

individuals with whom she seeks to compare herself.'"  Johnson v. Andy Frain Servs., Inc., 638

F. App'x 68, 70 (2d Cir. 2016) (quoting Littlejohn, 795 F.3d at 312, and then quoting Mandell v.

Cty. of Suffolk, 316 F.3d 368, 379 (2d Cir. 2003)).  Plaintiff pleads no such facts.  Indeed, the

facts pled in the Complaint demonstrate that Plaintiff and the White physician assistants are not similarly situated.

Plaintiff claims that Defendant Rivera intervened with Hospital managers to change the physician assistants' work schedule to benefit White physician assistants – advocating for them to "be the only ones working the night shift" – to the detriment of "minority Physician Assistants," who were then "confined to the day shift."  (Id. ¶¶ 34-38)  Plaintiff does not allege any facts demonstrating that the schedule change was premised on her race, however, other than the fact that she is Black.  "The assertion that [s]he is Black and they are White is simply insufficient as a factual pleading to allege racially motivated discrimination for purposes of a plausible [S]ection 1981 claim."  Raymond v. City of New York, 317 F. Supp. 3d 746, 766 (S.D.N.Y. 2018) (internal quotation marks omitted); see also Morales v. City of New York, 752 F.3d 234, 238 (2d Cir. 2014) (complaint failed to state a claim under 42 U.S.C. § 1981 where plaintiff merely alleged that defendants violated plaintiff's rights "because of their discriminatory intent" and "based on [plaintiff's] race and color"); Albert v. Carovano, 851 F.2d 561, 572 (2d Cir. 1988) (allegation that defendants "selectively enforc[ed] the College rules . . . against plaintiffs . . . because they are black [or] Latin" too conclusory under Section 1981); Smalls, 396 F. Supp. 2d at 371-72 (S.D.N.Y. 2005) ("'[A] [p]laintiff's speculations, generalities, and gut feelings, however genuine, when they are not supported by specific facts, do not allow for an inference of discrimination to be drawn.'" (quoting (Little v. State of N. Y., No. 96 CV 5132 (SJ), 1998 WL 306545, at *6 (E.D.N.Y. June 8, 1998), aff'd sub nom. Little v. State, 173 F.3d 845 (2d Cir. 1999))).

Moreover, the Complaint alleges that Plaintiff was hired to work the day shift (see Cmplt. (Dkt. No 7) ¶ 16), whereas her White colleagues were each hired to work the night shift.

(See id. ¶¶ 20-24; Union Br. (Dkt. No. 41) at 14-15)  The Complaint does not allege that Plaintiff

expressed any interest, at the time that her White colleagues were hired, in working the night

shift.  Accordingly, the fact that Defendants permitted the White physician assistants to continue

working the night shift that they were hired for – whereas Plaintiff was required to work the day

shift that she was hired for – does not constitute evidence of discriminatory intent.

        The Court concludes that the Complaint does not plead facts sufficient to

demonstrate either an adverse employment action or discriminatory intent under Section 1981

and the NYSHRL.  Accordingly, Defendants' motions to dismiss these claims will be granted.[7]

        **2.      NYCHRL Claims**

        Defendants contend that Plaintiff has not pled facts sufficient to make out a claim

under the NYCHRL.  (Hospital Br. (Dkt. No. 35) at 19-20; Union Br. (Dkt. No. 41) at 20-21)

        The NYCHRL makes it unlawful "[f]or an employer . . . because of [an

individual's] actual or perceived . . . race, . . . color, . . . [or] gender, . . . to discharge from

employment . . . or [t]o discriminate against such person in compensation or in terms, conditions

---

[7]  Although the Complaint does not plead a claim for breach of the duty of fair representation, in
her opposition brief, Plaintiff argues that the Union Defendants "breached their duty of fair
representation by creating a dichotomy in the way they represent [White and non-White
physician assistants]."  (Pltf. Br. (Dkt. No. 38) at 18)  A plaintiff cannot seek to supplement a
deficient complaint by adding new allegations or claims in an opposition brief, however.  See
Perez v. Int'l Bhd. of Teamsters, AFL-CIO, No. 00CIV1983LAPJCF, 2002 WL 31027580, at *4
(S.D.N.Y. Sept. 11, 2002) ("[W]hen opposing a motion to dismiss, a party may not amend [her]
complaint through new allegations made in [her] briefs.");  Lazaro v. Good Samaritan Hosp., 54
F. Supp. 2d 180, 184 (S.D.N.Y. 1999) ("[I]t is axiomatic that the Complaint cannot be amended
by the briefs in opposition to a motion to dismiss.").  In any event, any claim for breach of the
duty of fair representation fails, because Plaintiff has not plausibly alleged that the Union
Defendants failed to address a breach of the CBA or that they acted with discriminatory intent.
See Nweke v. Prudential Ins. Co. of Am., 25 F. Supp. 2d 203, 220-21 (S.D.N.Y. 1998); Bell v.
SL Green Realty Corp., No. 19 CIV. 8153 (LGS), 2021 WL 516575, at *7 (S.D.N.Y. Feb. 11,
2021) (dismissing a breach of the duty of fair representation claim where plaintiff had not
plausibly "allege[d] any particular act by the Union or that those acts were arbitrary,
discriminatory or in bad faith," or "that Defendant Union was motivated by racial animus").

or privileges of employment." N.Y. City Admin. Code § 8-107(1)(a). The NYCHRL likewise makes it unlawful "[f]or a labor organization or an employee or agent thereof, because of the actual or perceived . . . race . . color . . [or] gender . . . of any person, to . . . discriminate in any way against any of its members. . . ." Id. § 8-107(1)(c).

"[C]ourts must analyze NYCHRL claims separately and independently from any federal and state law [discrimination] claims." Mihalik v. Credit Agricole Cheuxreux N. Am., Inc., 715 F.3d 102, 109 (2d Cir.2013). While claims brought under the federal, state, and city law are all " analyzed under the burden-shifting McDonnell Douglas framework, and require the same elements for a prima facie case," Adams v. City of New York, 837 F. Supp. 2d 108, 127-28 (E.D.N.Y. 2011), the NYCHRL requires an independent and more liberal construction than its federal and state counterparts. Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 278 (2d Cir. 2009) ("[C]laims under the City HRL must be reviewed independently from and 'more liberally' than their federal and state counterparts." (citation omitted)).

"'To state a claim for [race] discrimination under the NYCHRL, a plaintiff must only show differential treatment of any degree based on a discriminatory motive.'" Wellington v. Spencer-Edwards, No. 16 CIV 6238 (AT) (JLC), 2017 WL 11512684, at *7 (S.D.N.Y. Sept. 28, 2017) (quoting Gorokhovsky v. N.Y.C. Hous. Auth., 552 F. App'x 100, 102 (2d Cir. 2014)). However, as the Wellington Court observed, "[e]ven under this minimal standard, a plaintiff must plausibly allege that . . . she was subjected to unequal treatment because of her protected characteristic." Id. (citing Mihalik, 715 F.3d at 110); see also Harris v. NYU Langone Med. Ctr., No. 12 CIV. 0454 RA JLC, 2013 WL 3487032, at *15 (S.D.N.Y. July 9, 2013), report and recommendation adopted as modified, No. 12 CIV. 0454 RA, 2013 WL 5425336 (S.D.N.Y. Sept. 27, 2013) ("While [plaintiff] properly pleads that she is a member of a protected class . . . ,

that she was qualified for her position . . . , and that she suffered an adverse employment action in being terminated, she fails to allege any connection between her termination and [d]efendants' allegedly [ ] discriminatory conduct.").

"In order to make such a showing, a plaintiff need only demonstrate that discrimination was 'one of the motivating factors for the defendant's conduct,' not that discrimination was the 'but-for' cause of the plaintiff's differential treatment." Forrester v. Corizon Health, Inc., 278 F. Supp. 3d 618, 626 (E.D.N.Y. 2017), aff'd, 752 F. App'x 64 (2d Cir. 2018) (quoting Williams v. New York City Housing Authority, 61 A.D.3d 62, 78 n.27 (1st Dept. 2009)).

Here, the Complaint does not allege any facts that plausibly suggest that race was a "motivating factor" for Defendants' alleged actions regarding the physician assistants' work schedules. Instead, the Complaint merely asserts – in a conclusory fashion – that Defendant Rivera favored White physician assistants. These conclusory allegations do not suffice, particularly given the circumstances discussed above, in which Plaintiff was hired for the day shift, and the White physician assistants were hired for the allegedly more favorable night shift – a shift assignment that Plaintiff did not seek when her White colleagues were hired. Accordingly, Defendant's motion to dismiss Plaintiff's NYCHRL claim is granted.

D.     **Tortious Interference Claim**

The Union Defendants contend that Plaintiff's tortious interference with contract claim against Defendant Rivera must be dismissed for failure to state a claim. (Union Br. (Dkt. No. 41) at 21-23)

As discussed earlier, to make out a prima facie claim of tortious interference with contract, a plaintiff must plead "'the existence of a valid contract between the plaintiff and a

third party, defendant's knowledge of that contract, defendant's intentional procurement of the third-party's breach of the contract without justification, actual breach of the contract, and damages resulting therefrom.'" Spiegel, 2015 WL 3429107, at *3 (quoting Lama Holding Co., 88 N.Y.2d at 424). "[W]here there is an existing, enforceable contract and a defendant's deliberate interference results in a breach of that contract, a plaintiff may recover damages for tortious interference with contractual relations even if the defendant was engaged in lawful behavior." NBT Bancorp v. Fleet/Norstar Fin. Group, 87 N.Y.2d 614, 621 (1996) (citing Israel v. Wood Dolson Co., 1 N.Y.2d 116, 119 (1956)).

Here, the Complaint alleges that "Rivera interfered tortiously with Plaintiff's employment contract with [the Hospital]." (Cmplt. (Dkt. No. 7) ¶ 60) But the Complaint pleads no facts concerning any employment contract between Plaintiff and the Hospital, much less that Rivera knew of such a contract, or that the contract was breached. Accordingly, Plaintiff's tortious interference claim will be dismissed for failure to state a claim. See Nat'l Gear & Piston, Inc. v. Cummins Power Sys., LLC, 861 F. Supp. 2d 344, 367 (S.D.N.Y. 2012) (dismissing tortious interference claim where plaintiff "ha[d] not adequately alleged the existence of a specific contract between itself and a particular third party"); Ho Myung Moolsan Co. v. Manitou Mineral Water, Inc., 665 F. Supp. 2d 239, 255 (S.D.N.Y. 2009) (denying leave to amend tortious interference with contract claim where "plaintiffs failed to identify a specific third-party contract").

### E.   Leave to Amend

"[I]t is often appropriate for a district court, when granting a motion to dismiss for failure to state a claim, to give the plaintiff leave to file an amended complaint." Van Buskirk v. N.Y. Times Co., 325 F.3d 87, 91 (2d Cir. 2003) (citing Branum v. Clark, 927 F.2d 698, 705 (2d

Cir. 1991)).  "Leave to amend should be freely granted, but the district court has the discretion to deny leave if there is a good reason for it, such as futility, bad faith, undue delay, or undue prejudice to the opposing party."  Jin v. Metro. Life Ins. Co., 310 F.3d 84, 101 (2d Cir. 2002) (citing Foman v. Davis, 371 U.S. 178, 182 (1962); Koehler v. Bank of Berm. (N.Y.) Ltd., 209 F.3d 130, 138 (2d Cir. 2000)).

Here, the Court cannot find that no amendment could cure the defects identified in this Order.  Accordingly, Plaintiff is granted leave to amend.  Any motion for leave to file an amended complaint will be served and filed by **March 29, 2021**.  The proposed Amended Complaint is to be attached as an exhibit to the motion.

## CONCLUSION

For the reasons stated above, Defendants' motions to dismiss (Dkt. Nos. 34, 40) are granted.  The Clerk of Court is directed to terminate the motions (Dkt. Nos. 34, 40).

Dated: New York, New York
       March 14, 2021

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge