```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  6/6/2025
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DEBRA JONES-CRUZ,

                              Plaintiff,

          -against-

BROOKDALE HOSPITAL MEDICAL CENTER,

                              Defendant.

19-CV-06910 (MMG)

**OPINION & ORDER**

MARGARET M. GARNETT, United States District Judge:

Plaintiff, a physician assistant, brought claims against her employer for disability-based discrimination and retaliation in connection with two requests for reasonable accommodations she made while she was on a leave of absence. Before the Court is Defendant's motion for summary judgment. For the reasons explained below, Defendant's motion is GRANTED, and the action is dismissed.

### FACTS AND PROCEDURAL HISTORY

I.     **Procedural History**

On July 24, 2019, Plaintiff Debra Jones-Cruz ("Plaintiff" or "Jones-Cruz") commenced this action by filing a complaint against her employer, Defendant Brookdale Hospital Medical Center.[1] ("Defendant" or "Brookdale"), as well as against Local 1199 SEIU (a labor union representing various employees at Brookdale) and Victor Rivera (Vice President of Local 1199 SEIU). *See* Dkt. No. 1.[2] Plaintiff initially alleged race discrimination under the New York State

---

[1] Plaintiff had incorrectly named Defendant as Brookdale University Hospital Medical Center.

[2] The Complaint was rejected for a filing deficiency, and Plaintiff refiled the Complaint on July 25, 2019. *See* Dkt. No. 7.

Human Rights Law ("NYSHRL"), the New York City Human Rights Law ("NYCHRL"), and 42 U.S.C. § 1981, as well as tortious interference with contract. *Id.*

On March 14, 2021, Judge Gardephe, who was then presiding over the case, granted motions to dismiss by all three original defendants, but he allowed Plaintiff to move for leave to amend. *See* Dkt. No. 44. Judge Gardephe subsequently denied Plaintiff leave to re-plead her race-related claims as futile, but granted her leave to file an amended complaint adding disability discrimination and retaliation claims. *See* Dkt. No. 53. Plaintiff amended the Complaint on November 24, 2022, asserting claims under the NYSHRL and NYCHRL. *See* Dkt. No. 57. Plaintiff subsequently procured a Right to Sue letter from the Equal Employment Opportunity Commission for claims under the Americans with Disabilities Act ("ADA"), and she filed a Third Amended Complaint on January 26, 2023. *See* Third Amended Complaint, Dkt. No. 67 ("Third Amended Complaint" or "TAC"). In the Third Amended Complaint, Plaintiff brought claims only against Brookdale for disability-based discrimination and retaliation in violation of the NYSHRL, the NYCHRL, and the ADA. *See id.*

The case was reassigned to the undersigned on March 11, 2024. Before the Court now is Defendant's motion for summary judgment as to all claims, which Plaintiff opposes. *See* Dkt. No. 112; Dkt. No. 114 ("Def.'s Br."); Dkt. No. 120 ("Opp. Br."); Dkt. No. 122 ("Rep. Br.").

II.    **Facts**

   A.    **Background**

Plaintiff began working at Brookdale in 2004, where she started as a *per diem* physician assistant ("PA") in the emergency room. Pl.'s Response to Def.'s 56.1 Statement, Dkt. No. 121 ("Pl.'s Reply 56.1") ¶¶ 44–45. In 2006, Plaintiff became a member of the labor union SEIU 1199 (the "Union") and, as such, subject to its collective bargaining agreement with Brookdale

2

(the "CBA").  *Id.* ¶¶ 52–53.  Beginning around 2009, she became a full-time PA in Brookdale's Department of Neurology, where she currently works.  *Id.* ¶¶ 49, 66.  As a PA in that department, she is responsible for "acting as a first responder for stroke codes, assessing stroke patients upon arrival, deciding medication for patients, assisting in the management of medical and surgical emergencies," and more.  *Id.* ¶ 51.  Plaintiff requested a medical leave of absence from Brookdale beginning July 4, 2019, and she was supposed to return from her approved leave on July 26, 2019.  *Id.* ¶¶ 67, 70.  The parties' version of events diverges after July 4, 2019, in various ways.

### B.    Plaintiff's Allegations in the Third Amended Complaint

Plaintiff alleged in the Third Amended Complaint that Defendant (1) discriminated and retaliated against her by delaying her return to work through not acting on her requests for reasonable accommodations for nearly a year, and (2) discriminated against her by denying her request for a schedule that would accommodate her medically-necessary therapy appointments. With respect to the first category, Plaintiff alleged that although she was medically cleared to return to work in August 2020 and although she had completed the necessary paperwork to return to work by September 2020, she was not "allowed to return to work consistent with the requests [she made] in . . . [two] reasonable accommodation requests" until July 2021.  TAC ¶¶ 22, 26–27, 31, 69.  Plaintiff alleged that on September 20, 2020, and again on April 15, 2021, due to complications from a back injury, she made requests for reasonable accommodations, including to:  walk with a cane, not stand for more than two hours or climb stairs, not lift more than 20 pounds, "attend [mental health, aquatic, and acupuncture] therapy on Mondays, Tuesdays, and on a third day which may[ ]be Friday but can be flexible," and be "provided with a well-ventilated room with HEPA filter."  *Id.* ¶¶ 10–17, 33, 38 & ex. 1.  She alleged that "the

hospital ultimately acted on the reasonable accommodation requests [in July 2021] after more than a year of refusal to act." *Id.* ¶¶ 18, 21.

### C.    Facts Drawn from the Parties' Rule 56.1 Statements and Exhibits

As an initial matter, and as set forth in further detail below, at the summary judgment stage, the Court looks to the parties' Local Civil Rule 56.1 Statements and the exhibits submitted. Unless otherwise indicated, the following facts are drawn primarily from the parties' Rule 56.1 Statements and the exhibits filed by the parties. Also, unless otherwise noted, where only one party's response to the other party's 56.1 Statement is cited, that party does not dispute the fact at issue, has offered no admissible evidence to refute that fact, or merely objects to inferences drawn from that fact.

In Plaintiff's Rule 56.1 statement, Plaintiff cites extensively to her own unverified Third Amended Complaint. An unverified complaint is *not* evidence. *See Caro Cap., LLC v. Koch*, 653 F. Supp. 3d 108, 132 (S.D.N.Y. 2023) ("It is blackletter law that an unverified complaint is not evidence that can be relied upon at summary judgment."). As such, where statements in Plaintiff's Rule 56.1 statement cite only to the Third Amended Complaint and are otherwise unsupported by record evidence, and where Defendant does not admit such statements, the Court does not consider them as facts relevant to summary judgment.

#### i.    Plaintiff's Leave of Absence Beginning in 2019

Plaintiff's approved leave of absence initially ended on July 26, 2019. Pl.'s Reply 56.1 ¶ 70. However, Plaintiff stated during her deposition that she did not return to work at that time because she became ill. *Id.* ¶ 70; Def.'s Ex. 7, Dkt. No. 113-8 (Jones-Cruz Deposition Tr. 172:5–173:22). On August 9, 2019, Brookdale sent Plaintiff a letter notifying her that her time away from work after July 27, 2019 was unauthorized, and that Brookdale required re-certification of

her need for leave if she wanted to request an extension of her leave; Brookdale requested that
she contact the Benefits Department ("Benefits") by August 20, 2019. Pl.'s Reply 56.1 ¶¶ 73–
75; Def.'s Ex. 9, Dkt. No. 113-10 (Aug. 9, 2019 letter). On August 21, 2019, after not receiving
an extension request by the deadline, Brookdale sent Plaintiff another letter asking her to provide
the certification by August 30, 2019 if she wanted to request an extension of her leave. Pl.'s
Reply 56.1 ¶¶ 76–79; Def.'s Ex. 10, Dkt. No. 113-11 (Aug. 21, 2019 letter). Plaintiff asserts that
she never received the letters because her mailing address changed. *See* Pl.'s Reply 56.1 ¶¶ 73–
80, 132-133.

On August 22, 2019, Plaintiff emailed Benefits stating that she had just received a
package of Family Medical Leave Act ("FMLA") forms, and that she would follow up with her
physician to complete the FMLA paperwork. *Id.* ¶¶ 81–82; Def.'s Ex. 11, Dkt. No. 113-12 (Aug.
22, 2019 email). Plaintiff also wrote that her address had changed. Def.'s Ex. 11, Dkt. No. 113-
12. Michelle Gonzalez responded, indicating that she was sending Plaintiff, *inter alia*, the
August 9 and August 21 letters. *Id.*

After back and forth with Brookdale regarding filling out various required forms and
providing supporting documentation for requesting extended leaves of absence, Plaintiff
requested and was approved for three additional extensions of her leave of absence: Plaintiff's
leave of absence was (as requested by Plaintiff) first extended until January 3, 2020, then again
until March 17, 2020, and then again until September 22, 2020. Pl.'s Reply 56.1 ¶¶ 85–90, 92–
99, 101–03, 113–18. All three times, Brookdale sent Plaintiff letters notifying her of her leave of
absence dates and outlining several standards for the leave, including that Plaintiff had to present
Human Resources ("HR") and Occupational Health Services ("OHS") with a fitness-for-duty
form for clearance to return to work, that her return to work may be delayed until this form was

provided, and that Plaintiff was required to contact HR two weeks before the end of her leave

period to obtain clearance. *Id.* ¶¶ 91, 99–100, 118–20; Def.'s Ex. 16, Dkt. No. 113-17 (Sept. 24,

2019 letter); Def.'s Ex. 24, Dkt. No. 113-25 (Mar. 9, 2020 letter); Def.'s Ex. 29, Dkt. No. 113-30

(July 20, 2020 letter). In addition, prior to approving Plaintiff's third extension request, on June

30, 2020, Gonzalez also emailed Plaintiff with instructions explaining the prerequisites for

Plaintiff's return to work, including that Plaintiff must submit a fitness-for-duty certificate, that

she must contact HR after receiving OHS clearance to schedule an HR orientation, and that

Plaintiff must be re-credentialed in order to return to work. Pl.'s Reply 56.1 ¶ 117; Def.'s Ex. 28,

Dkt. No. 113-29 (June 30, 2020 email).

In around August or September 2020, prior to Plaintiff's scheduled return to work from

her third approved leave extension, Gonzalez and Oksana Kotlarsky, Department of Neurology

Administrator, informed Plaintiff that "she needed to call Medical Staff Services, the department

that handled credentialing, to ensure that her credentials were up-to-date for her return to work."

Pl.'s Reply 56.1 ¶¶ 123–124. On September 22, 2020, Medical Staff Services contacted Plaintiff

and informed her that she could not be reinstated without reappointment to the medical staff

because her credentials had lapsed during her leave of absence. *Id.* ¶¶ 126–27. Credentialing

could take two to three months. *Id.* ¶ 125. Plaintiff eventually resolved her credentialing issue

and was cleared to return to work around October 8, 2020. *Id.* ¶ 128. During the period when

Plaintiff was resolving her credentialing issue, Brookdale was in communication with Plaintiff.

*Id.* ¶ 131. On October 9, 2020, Kotlarsky emailed Plaintiff and informed her that prior to

returning to work, she would need to complete additional training due to her extended leave of

absence. *Id.* ¶ 130.

###### ii.      Plaintiff's Requests for Accommodations

On September 21, 2020, Plaintiff submitted to Brookdale a request for accommodations that she would require between her return to work and March 22, 2021, including:  no climbing stairs, running, lifting, or pushing more than twenty pounds; permission to use a cane or walker; use of a well-ventilated area for breaks and work; and the ability to continue therapy three times per week.  *Id.* ¶¶ 137-140; Def.'s Ex. 33, Dkt. No. 113-34; Def.'s Ex. 7, Dkt. No. 113-8 (Jones-Cruz Deposition Tr. 266:3–267:10).

Gonzalez subsequently spoke to Plaintiff about each of her requests, and Brookdale employees had various internal discussions about the requests.  Pl.'s Reply 56.1 ¶¶ 141–42, 143–48.  For instance, Dahlia Jeffers, Director of HR, discussed the requested accommodations with the Department of Neurology, including Kotlarsky (Plaintiff's medical supervisor), who expressed concerns both about Plaintiff's ability to perform the necessary tasks of her job, including quickly responding to a stroke code given her request to use an assistive device and not climb stairs or run, and about Plaintiff's schedule, in light of the Department's small size and staffing issues during the COVID-19 pandemic.  *Id.* ¶¶ 143, 145.

Brookdale ultimately granted all of Plaintiff's physical accommodation requests.  *Id.* ¶ 151; Def.'s Ex. 7, Dkt. No. 113-8 (Jones-Cruz Deposition Tr. 279:14–22).  In a February 11, 2021, letter, Brookdale confirmed that Plaintiff should return to work on February 28, 2021; it also granted the physical accommodations she requested until March 21, 2021, and informed her of her weekly schedule (three shifts): Sunday, Tuesday, and Thursday on the first week and Monday, Friday, and Sunday on the second week.  Pl.'s Reply 56.1 ¶¶ 153–55.  The letter stated, "[Y]ou have confirmed that you can schedule your required, continued therapy so it does not conflict with your work schedule."  Def.'s Ex. 35, Dkt. No. 113-36 (Feb. 11, 2021 letter).

Plaintiff, however, wanted to work her original work schedule, and she emailed Gonzalez, stating the proposed schedule was "unacceptable" and could be considered a violation of the CBA, which Plaintiff stated in her email provides that "one is required to work the shift and schedule to which they were hired." Def.'s Ex. 36, Dkt. No. 113-37 (Feb. 25, 2021 email); Pl.'s Reply 56.1 ¶ 156. She did not mention her need to attend therapy on particular days in this email. Pl.'s Reply 56.1 ¶ 157. At her deposition, however, Plaintiff admitted that the CBA does not set employees' weekly schedules; that is determined by Brookdale's operational needs. *Id.* ¶ 55; *see also* Def.'s Ex. 7, Dkt. No. 113-8 (Jones-Cruz Deposition Tr. 284:24–285:5) ("Q. The CBA does not set employees' weekly schedule, though, correct? // A. Correct. Q. The hospital sets the weekly schedule based on operational needs, correct? // A. Correct."). In fact, Plaintiff wanted her original schedule because, on some of the days she was not working at Brookdale, she worked full-time as a PA at NYU Langone Hospital in Brooklyn ("NYU"). Pl.'s Reply 56.1 ¶¶ 163, 165, 209–10.

Brookdale informed Plaintiff that it could not adjust her schedule to her preferred days because it would be unfair to her colleagues. *Id.* ¶ 159. Plaintiff told Brookdale this was "fine," but she did not return to work on February 28, 2021. *Id.* ¶¶ 161, 166. Brookdale sent Plaintiff a letter on March 12, 2021, reiterating her schedule and informing her that she needed to return to work on March 23, 2021. *Id.* ¶ 167. On March 17, 2021, Plaintiff's Union filed a grievance regarding her work schedule. *Id.* ¶ 168. Also in or around March 2021, Plaintiff submitted to Brookdale a proposed work schedule; although Plaintiff was mostly attending therapy on Wednesdays, Thursdays, and Fridays (with the schedule becoming less frequent towards the end of her treatment), Plaintiff's proposed schedule conflicted in part with her scheduled therapy days. *Id.* ¶¶ 173, 184.

On April 9, 2021, Brookdale sent Plaintiff another letter confirming that she was due to return to work but did not do so because she had objected to the proffered schedule, and requiring that she return to work by April 26, 2021. *Id.* ¶¶ 174, 176. The letter set forth Plaintiff's work schedule for the first six weeks after her return and informed her that because her previous request for (physical) accommodations expired on March 21, 2021, she would need to send updated documentation for any further accommodations. *Id.* ¶¶ 177, 179. The letter also informed Plaintiff that upon her return to work on April 26, she would need to report to OHS to obtain the necessary clearance and participate in updated training. *Id.* ¶ 178.

Around April 15, 2021, Plaintiff submitted a second request for accommodations in which she reiterated her prior physical accommodation requests and requested that she not work on her therapy appointment days, which she wrote were "Mondays and Tuesdays fixed with Wednesdays flexible." Def.'s Ex. 41, Dkt. No. 113-42 at 8 (second accommodation request); Pl.'s Reply 56.1 ¶¶ 181–82. In fact, Plaintiff was *not* generally attending therapy on many of those days; rather, she was mostly attending therapy on Wednesday, Thursday, and Friday, and the days she requested off were some of the days during which she was working at NYU: Saturday, Sunday, Monday, and Tuesday. *Id.* ¶¶ 182, 184–85.

After Plaintiff submitted her second request for accommodations, Brookdale again went through its process of having internal discussions among various departments regarding the feasibility of the requests, and in internal correspondence, Kotlarsky stated that Plaintiff's proposed schedule would not be consistent with necessary coverage for the Department of Neurology. *Id.* ¶¶ 188–92.

Plaintiff did not return to work on April 26; around May 21, 2021, she reported to OHS for a drug test and clearance to return to work. *Id.* ¶¶ 193–94. Plaintiff was not medically

cleared to return to work at that time because she had provided an outdated Fitness for Duty Certification; around June 3, 2021, Plaintiff submitted a current Fitness for Duty Certification. *Id.* ¶¶ 195–96.  Brookdale processed Plaintiff's accommodation requests, and on July 9, 2021, sent Plaintiff a letter granting her physical accommodation requests, setting her return-to-work date for July 19, 2021, and providing her schedule for her first eight weeks.  *Id.* ¶¶ 197–99.  In the July 9 letter, Brookdale denied Plaintiff's schedule request because, according to Brookdale, it would "[r]equire the Hospital to violate its [CBA] for the scheduling of the other day shift Physician Assistant," would "place an unfair, undue and unhealthy burden on the other Physician Assistant, requiring that position to work every weekend," and would "impose additional financial and operational burdens on the Hospital[.]"  Def.'s Ex. 50, Dkt. No. 113-55 (July 9, 2021 letter); Pl.'s Reply 56.1 ¶ 200.

Plaintiff was cleared by OHS to return to work on July 22, 2021, but could not return until she attended reorientation and received her updated schedule.  Pl.'s Reply 56.1 ¶ 201.  She attended orientation on July 26, 2021, and returned to work in or around August 2021.  *Id.* ¶¶ 203–04.

### iii.    The Alleged Retaliation Against Plaintiff

In Plaintiff's Rule 56.1 statement, Plaintiff reiterated the allegations she made in her Third Amended Complaint regarding alleged remarks made by HR staff that Plaintiff argued show that Brookdale delayed her return to work in retaliation for Plaintiff engaging in protected activities, including filing the instant lawsuit and requesting reasonable accommodations.  *See* Def.'s Response to Pl.'s 56.1 Statement, Dkt. No. 123 ("Def.'s Reply 56.1") ¶¶ 272–93.  In doing so, in many instances, Plaintiff cited only to her unverified Third Amended Complaint, which is not evidence; to the extent Plaintiff did not cite to evidence in the record and Defendant denied Plaintiff's statements, the Court does not consider them.

Plaintiff testified during her deposition that Gonzalez told her: "[t]his is the schedule that I have. This is what we are willing to do for you; that I should be grateful that they are accommodating me to come back, and I can go ahead, if I choose, if I don't like it, I can go ahead and formulate another lawsuit." Def.'s Ex. 7, Dkt. No. 113-8 (Jones-Cruz Deposition Tr. 274:15–22); *see also* Def.'s Reply 56.1 ¶ 272.[3] In Gonzalez's deposition, Gonzalez denied any recollection of this purported conversation. Def.'s Ex. 3, Dkt. No. 113-4 (Gonzalez Deposition Tr. 43:6–22).

Plaintiff also testified that at some point after she was presented with a proposed work schedule—Plaintiff believed around September 2020[4]—she spoke with Gaitre Lorick, Vice-President of HR, regarding her accommodations, and Lorick "in as much told [Plaintiff] that . . . Brookdale does not allow individuals to use canes or any other assistive device to work." Def.'s Ex. 7, Dkt. No. 113-8 (Jones-Cruz Deposition Tr. 272:4–21, 273:10–15). During Lorick's deposition, she denied having such a conversation with Plaintiff, or any conversations at all with Plaintiff regarding her leave of absence or return to work. Def.'s Ex. 2, Dkt. No. 113-3 (Lorick Deposition Tr. 38:18–39:10).

Plaintiff further testified that at an unspecified time,[5] she went to Brookdale and asked to speak to Jeffers; Plaintiff stated she was first told by an unspecified person (presumably the person identified in the Third Amended Complaint as "Ms. Ganesh," TAC ¶¶ 58–60) that Jeffers was in a meeting, and was subsequently told that Jeffers "never came out to work, and one of the

---

[3] Although Plaintiff could not recall at her deposition when the alleged conversation occurred, the Third Amended Complaint and Plaintiff's Rule 56.1 statement suggest that this conversation purportedly occurred sometime around February 2021. TAC ¶¶ 47–51; Pl.'s Reply 56.1 ¶¶ 141, 269–72.

[4] In the Third Amended Complaint, Plaintiff appeared to allege that this conversation occurred sometime on or after March 17, 2021. TAC ¶¶ 66–67.

[5] In the Third Amended Complaint, Plaintiff appeared to allege that this conversation occurred sometime on or after March 17, 2021. *Id.* ¶¶ 57–59.

reasons being is that we know you're a difficult person, so we were trying to get individuals who would deal with you." Def.'s Ex. 7, Dkt. No. 113-8 (Jones-Cruz Deposition Tr. 319:7–22).

## LEGAL STANDARD FOR SUMMARY JUDGMENT

The standard for summary judgment is well established. A court will grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the materials that "it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to "'set forth specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quoting *First Nat. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968)). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The non-moving party cannot reply upon "conclusory allegations or unsubstantiated speculation" to defeat a motion for summary judgment. *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998). Rather, it "must offer some hard evidence showing that its version of the events is not wholly fanciful." *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (quoting *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998)).

The court must resolve ambiguities and draw all reasonable inferences in favor of the non-moving party. *See Summa v. Hofstra Univ.*, 708 F.3d 115, 123 (2d Cir. 2013). "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." *Jeffreys*, 426 F.3d at 553 (quoting *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996)). "However, the mere existence of a scintilla of evidence in

support of the [non-movant's] position will be insufficient; there must be evidence on which the

jury could reasonably find for the [non-movant]." *Id.* at 554 (internal marks and emphasis

omitted) (quoting *Anderson*, 477 U.S. at 252).

**DISCUSSION**

## I.      Disability Discrimination

### A.      Legal Standards: ADA and NYCHRL

The ADA prohibits discrimination "against a qualified individual on the basis of

disability in regard to . . . terms, conditions, and privileges of employment."  42 U.S.C.

§ 12112(a).  The NYCHRL similarly prohibits "an employer or an employee or agent thereof,

because of the . . . disability . . . of any person . . . [t]o discriminate against such person in

compensation or in terms, conditions or privileges of employment."  N.Y.C. Admin. Code § 8-

107(1)(a)(3).

Disability discrimination claims under the ADA, the NYCHRL, and the NYSHRL are

subject to the burden-shifting analysis established in *McDonnell Douglas Corp. v. Green*, 411

U.S. 792 (1973).  *See Krow v. PineBridge Invs. Holdings U.S. LLC*, No. 19-cv-5711 (ER), 2022

WL 836916, at *13 (S.D.N.Y. Mar. 21, 2022); *see also Nieblas-Love v. New York City Housing

Auth.*, 165 F. Supp. 3d 51, 72–73 (S.D.N.Y. 2016).  Under the burden-shifting framework, the

plaintiff must first establish a *prima facie* case of discrimination; if the plaintiff establishes a

*prima facie* case, "the burden shifts to the defendant to proffer some legitimate

nondiscriminatory reason for the adverse action."  *Krow*, 2022 WL 836916, at *13 (citing *Spiegel

v. Schulmann*, 604 F.3d 72, 80 (2d Cir. 2010)).  Disability discrimination includes failure to

provide an employee with a reasonable accommodation for her disability.  *McMillan v. City of

New York*, 711 F.3d 120, 125 (2d Cir. 2013); *Nieblas-Love*, 165 F. Supp. 3d at 73.

13

To establish a *prima facie* case of failure to accommodate a disability under the ADA, the plaintiff must demonstrate that:  "(1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations."  *McMillan*, 711 F.3d at 125-26 (quoting *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 97 (2d Cir. 2009)).  "In the context of the ADA, reasonable accommodation may include, *inter alia*, modification of job duties and schedules[.]"  *McBride*, 583 F.3d 92 at 97 (citing 42 U.S.C. § 12111(9)(B)).

Under the fourth prong of the *prima facie* test, a refusal to grant reasonable accommodations can be actual or constructive; an "'indeterminate delay has the same effect as an outright denial.'"  *Logan v. Matveevskii*, 57 F. Supp. 3d 234, 257 (S.D.N.Y. 2014) (quoting *Groome Res. Ltd. L.L.C. v. Parish of Jefferson*, 234 F.3d 192, 199 (5th Cir. 2000)).  In assessing constructive denial, "courts often consider whether the delay was caused by the defendant's unreasonableness, unwillingness to grant the requested accommodation, or bad faith, as opposed to mere bureaucratic incompetence or other comparatively benign reasons."  *Id.*; *see also Hamedl v. Weiland*, No. 10-cv-2738 (SJF) (GRB), 2012 WL 3903499, at *7 (E.D.N.Y. Sept. 6, 2012), *aff'd sub nom. Hamedl v. Verizon Comms., Inc.*, 557 F. App'x 68 (2d Cir. 2014) ("To demonstrate that the delay in accommodation violated the ADA, plaintiff must 'prove that the delay was motivated by discriminatory intent.'" (quoting *De La Rosa v. City of New York Police Dept.*, No. 09-cv-5290, 2010 WL 4177626, at *9 (S.D.N.Y. Oct.22, 2010)).

To show a *prima facie* case for disability discrimination on the basis of failure to accommodate under the NYSHRL and NYCHRL, a plaintiff must prove the same four elements as required under the ADA.  *See Nieblas-Love*, 165 F. Supp. 3d at 73; *Stryker v. HSBC Secs.*

14

*(USA)*, No. 16-cv-9424, 2020 WL 5127461, at *11 (S.D.N.Y. Aug. 31, 2020).  However, "courts must analyze NYCHRL claims separately and independently from any federal and state law claims," because the standard for proving the elements may be different under NYCHRL. *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013); *see also id.* (explaining that federal and state law interpretations serve only as "a floor below which the City's Human Rights Law cannot fall" (internal citation omitted)).  Under the NYCHRL, "the plaintiff need only show that her employer treated her less well, at least in part for a discriminatory reason."  *Id.* at 110 n.8.  The employer is entitled to summary judgment on the basis of a legitimate, non-discriminatory motive "only if the record establishes as a matter of law that discrimination played *no* role."  *Id.* (internal references omitted)..[6]

### B.    Application

#### i.    Claims Regarding Actual Denial of Accommodations

With respect to Plaintiff's allegation that Defendant denied her reasonable accommodation requests, Defendant argues that it ultimately granted all of the physical accommodation requests and that Plaintiff's request for a particular schedule was unreasonable

---

[6] Plaintiff's Third Amended Complaint alleges disability discrimination under the NYSHRL.  *See* TAC ¶ 71.  Although Defendant raised substantive arguments as to why Plaintiff's claim for disability discrimination under the NYSHRL should be dismissed, Plaintiff failed to make any arguments regarding this claim in her opposition brief, and thus she has abandoned the claim.  *See Adams v. New York State Educ. Dep't*, 752 F. Supp. 2d 420, 426 n.5 (S.D.N.Y. 2010), *aff'd sub nom. Ebewo v. Fairman*, 460 F. App'x 67 (2d Cir. 2012) (summary order).  Even if the Court were to consider the claim, the standard for disability discrimination under the NYSHRL involves consideration of the same factors for asserting a *prima facie* case as under the ADA and the NYCHRL.  *See Nieblas-Love*, 165 F. Supp. 3d at 73.  The New York legislature amended the NYSHRL in August 2019 to provide a standard "closer to the [more liberal] standard of the NYCHRL"; because the alleged conduct at issue began in 2020 following the August 12, 2019 effective date of that amendment, the NYCHRL's more liberal framework applies.  *Edelman v. NYU Langone Health Sys.*, No. 21-cv-502 (LGS), 2022 WL 4537972, at *14 (S.D.N.Y. Sept. 28, 2022) (internal quotation omitted); *see also Arazi v. Cohen Bros. Realty Corp.*, No. 20-cv-8837 (GHW), 2022 WL 912940, at *7 (S.D.N.Y. Mar. 28, 2022).  For the same reasons discussed below, the Court would grant summary judgment to Defendant on this claim.

because the request was made only to accommodate her second job at NYU and not any legitimate medical need.  Def.'s Br. at 12, 14.  Alternatively, Defendant argues that even if the scheduling request was reasonable, Defendant was not obligated to grant it because it imposed an undue burden on Defendant.  *Id.* at 14-15.

Even if Plaintiff can make out the other elements of a *prima facie* case under the ADA and NYCHRL, the Court concludes that she has failed as a matter of law to establish that she was denied reasonable accommodations.  As Plaintiff admits, Defendant in fact granted all of the requests for physical accommodations:  In a February 11, 2021, letter, Defendant granted all of the physical accommodations Plaintiff requested on September 21, 2020.  Pl.'s Reply 56.1 ¶ 153; Def.'s Ex. 35, Dkt. No. 113-36 (Feb. 11, 2021 letter).  And in a July 9, 2021, letter, Defendant granted all of the physical accommodations she requested on April 15, 2021.  Pl.'s Reply 56.1 ¶¶ 181, 198–99; Def.'s Ex. 50, Dkt. No. 113-55 (letter dated July 9, 2021).

Plaintiff disingenuously posits that "Defendant expressed their refusal to allow Plaintiff to return to work, stating clearly that the Defendant could not accommodate her requests to come back to work because the physical requirements for the job could not be accommodated."  Opp. Br. at 2.  As evidence, Plaintiff points to internal emails at Brookdale between June 11, 2021, and June 18, 2021, in which Brookdale employees were determining whether it was possible to accommodate Plaintiff's request.  *See id.* at 5 (citing Def.'s Ex. 49, Dkt. No. 113-54).  But review of the emails shows clearly that Brookdale was merely processing the requests Plaintiff made in April 2021 and determining whether they could be reasonably accommodated.  *See* Def.'s Ex. 49, Dkt. No. 113-54.  As part of this process, members of the Department of Neurology expressed skepticism as to whether Plaintiff could, with the accommodations requested, "respond to the Stroke codes right away," as a Neurology PA would need to do.  Def.'s Ex. 49, Dkt. No.

113-54.  The emails did not constitute a final determination as to Plaintiff's April 2021

accommodations requests, and it is undisputed that Defendant ultimately granted Plaintiff's

requests for physical accommodations, despite the objections raised by her medical supervisors.

Pl.'s Reply 56.1 ¶¶ 197–99..[7]

With respect to Plaintiff's request for a preferred schedule that Plaintiff made in April

2021, which Defendant denied, Defendant has demonstrated that Plaintiff's request for her

preferred schedule was not reasonable and was not needed to accommodate her disability.  Under

the ADA, "it is well established that an employer need only provide an accommodation that is

'sufficient to meet the job-related needs of the individual being accommodated' and is not

require[d] 'to meet the personal preferences of disabled employees.'"  *Nieblas-Love*, 165 F.

Supp. 3d at 73 (quoting *Raffaele v. City of New York*, No. 00-cv-3837 (DGT) (RLM), 2004 WL

1969869, at *16 (E.D.N.Y. Sept. 7, 2004)).  Here, the undisputed facts show that Plaintiff's

request for off-days on Mondays, Tuesdays, and Wednesdays was in reality *not* a request to

accommodate otherwise inflexible therapy days, as she suggested in her April 2021

accommodation request, because, as Plaintiff later admitted, she was mostly attending therapy on

Wednesdays, Thursdays, and Fridays, and was working her second job at NYU on many of the

days she requested off for "therapy."  Pl.'s Reply 56.1 ¶¶ 184–85.  Rather, the request for specific

days off was nothing more than a preference, and failure to accommodate Plaintiff's preference

does not amount to unlawful discrimination.  *Bresloff-Hernandez v. Horn*, No. 05-cv-0384

(JGK), 2007 WL 2789500, at *10 (S.D.N.Y. Sept. 25, 2007) (denying plaintiff's request for a

---

[7] Plaintiff also argues that in one internal email (which Plaintiff cited by reference to a Bates number), Plaintiff's attending physician, Dr. Kay, stated that Plaintiff indicated she would switch her "PT days," but that the Department of Neurology needed her full time, not part time.  Opp. Br. at 5.  Plaintiff argued that she was "referring to her physical therapy," and that she never requested part-time work.  *Id.* Even if true, the issue of part-time work is not before the Court, and Plaintiff fails utterly to explain what relevance this has to the issues before the Court.

change in shift because, while plaintiff purportedly made the request to facilitate her exercise regime to help her health, "there [was] no connection between reduced commuting time and the plaintiff's ability to work out;" further, defendant contended and plaintiff did not refute that the request was in fact to accommodate plaintiff's work schedule for a second job).

The same is true under the NYCHRL, even though it defines "reasonable accommodation" broadly as "such accommodation that can be made that shall not cause undue hardship in the conduct of the [employer's] business." N.Y.C. Admin. Code § 8-102. The NYCHRL is "'not boundless,'" and Plaintiff must still demonstrate that the request was related to her disability and "that the accommodation requested would actually allow plaintiff to perform (or more easily perform) 'the essential functions of the job at issue.'" *Nieblas-Love*, 165 F. Supp. 3d at 74 (quoting *LeBlanc v. United Parcel Serv.*, No. 11-cv-6983 (KPF), 2014 WL 1407706, at \*13, 17 (S.D.N.Y. Apr. 11, 2014)). Plaintiff's desire for her preferred schedule— which the undisputed facts show was unrelated to her therapy—was accordingly "unrelated to the interaction between Plaintiff's disability and [her] ability to perform the essential functions of [her] job." *Id.*; *see also Bresloff-Hernandez*, 2007 WL 2789500, at \*10–11.

Plaintiff's request for physical accommodations was granted and Plaintiff failed to raise any genuine disputes of material fact suggesting that her requested schedule was related to her disability. Therefore, neither the ADA nor the NYCHRL required Defendant to accommodate the request. Defendant is entitled to summary judgment. *See Howard v. United Parcel Serv., Inc.*, 101 F. Supp. 3d 343, 352 (S.D.N.Y. 2015) ("Summary judgment . . . is appropriate where a plaintiff fails to identify a facially reasonable accommodation that the defendant refused to provide[.]" (internal references omitted) (quoting *Gronne v. Apple Bank for Sav.*, 1 F. App'x 64, 67 (2d Cir. 2001))).

###### ii.    Claims Regarding Constructive Denial of Requests

Plaintiff next alleges that Defendant essentially constructively denied her accommodation requests by unreasonably delaying processing them and engaging in "delay tactics" to prevent her return to work. Opp. Br. at 2. Defendant argues that any delay in granting Plaintiff's requests was not unreasonable and was not motivated by discriminatory intent. Def.'s Br. at 13–14.

The undisputed evidence shows that the delay (if any) in granting Plaintiff's requests for accommodations was not based on bad faith or any discriminatory intent by Defendant to deny the requests. *See Logan*, 57 F. Supp. 3d at 257. While Plaintiff frames the delay as one in which she submitted her request for accommodations in September 2020 and was only able to return to work in August 2021, in fact, Defendant granted the September 2020 request in February 2021, just five months later. Pl.'s Reply 56.1 ¶ 153; Def.'s Ex. 35, Dkt. No. 113-36 (letter dated Feb. 11, 2021).[8] In responding to the requests, Defendant engaged in the normal process of assessing Plaintiff's requests, discussing the requests internally, and determining whether they could reasonably be accommodated. Pl.'s Reply 56.1 ¶¶ 141–48; *see also Perez v. New York Presbyterian/Weill Cornell Med. Ctr.*, No. 23-cv-06152 (CS), 2024 WL 1514216, at *8 (S.D.N.Y. Apr. 8, 2024) ("The ADA envisions an 'interactive process' by which employers and employees work together to assess whether an employee's disability can be reasonably accommodated. . . . Once the process is triggered, the employer must make a reasonable effort to determine an appropriate accommodation based on the particular job involved and consultation with the employee[.]" (internal references omitted)). The time taken to process and grant Plaintiff's

---

[8] In any event, Plaintiff could not have returned to work any sooner than mid-October 2020, at the earliest, because of the need to renew her medical credentials and complete necessary training following her long leave of absence. Pl.'s Reply 56.1 ¶¶ 124-128, 130. Accordingly, any "delay" caused by Defendant was at most four months.

requests was not unreasonable under the circumstances and did not, by itself, show a discriminatory delay. *See, e.g.*, *Sanders v. Queensborough Cmty. Coll.*, No. 13-cv-05617 (PKC), 2015 WL 5655719, at *7 (E.D.N.Y. Sept. 24, 2015) (dismissing claim despite a seven-month delay in responding to an accommodation request because "[t]he length of the delay alone does not raise an inference of discriminatory intent under the circumstances of th[e] case"); *McCrain v. Metro. Transp. Auth.*, No. 17-cv-02520 (RA), 2020 WL 1285634, at *18 (S.D.N.Y. Mar. 18, 2020) (two-month delay). Moreover, Plaintiff points to no evidence whatsoever that the lapse of time between September 2020 and February 2021 was caused by any improper motive or discriminatory intent. Rather, the objective evidence shows Brookdale employees taking steps to ensure and assist in Plaintiff's return to work. *See, e.g.*, Pl.'s Reply 56.1 ¶¶ 124-131.

Subsequently, between February 11, 2021—when Defendant sent Plaintiff a letter granting her request for physical accommodations—and April 15, 2021—when Plaintiff made her second request for accommodations—Plaintiff chose not to return to work because she was unhappy with her work schedule, and she ultimately filed a grievance. Def.'s Ex. 36, Dkt. No. 113-37 (Feb. 25, 2021 email); Pl.'s Reply 56.1 ¶¶ 156, 168, 181. Plaintiff also had not completed certain administrative requirements for returning to work, despite continual reminders by Defendant. Pl.'s Reply 56.1 ¶¶ 91, 100, 119–20, 124–127; Def.'s Ex. 16, Dkt. No. 113-17 (Sept. 24, 2019 letter); Def.'s Ex. 24, Dkt. No. 113-25 (Mar. 9, 2020 letter); Def.'s Ex. 29, Dkt. No. 113-30 (July 20, 2020 letter). Plaintiff's April 2021 requests (other than her request for a particular schedule, which, as explained, was not a reasonable request) were granted on July 9, 2021, less than three months later. Pl.'s Reply 56.1 ¶¶ 181, 197–99. During this time, Brookdale again engaged in internal discussions among various departments regarding whether it could reasonably accommodate the requests. *Id.* ¶¶ 188–92. Moreover, Plaintiff still had not taken the

steps she needed to return to work, including obtaining clearance, which she completed *after* July 9, 2021. *See, e.g.*, *id.* ¶¶ 201–03.

Overall, any delays in processing Plaintiff's requests (as well as delays between July 9, 2021, and when Plaintiff ultimately returned to work in August 2021) were either benign and attributable to ongoing normal administrative processes and discussions for approving the requests by Defendant, or were a result of Plaintiff's own delay.

Plaintiff argues in a conclusory fashion, without citation, that Defendant "refused to treat Plaintiff like any other employee by creating a process only for her that would subject her determination of her reasonable accommodation to the legal office and HR department instead of a determination by her department as is the case with other employees." Opp. Br. at 2. But Plaintiff's statement amounts to nothing more than conjecture, and indeed Plaintiff herself admitted that Brookdale has a process for assessing requests for reasonable accommodation, which involves a review by HR and discussion of the request with the requesting employee, and a "conversation with the requesting-employee's department as to whether such request can be granted based on business and operational needs." *See* Pl.'s Reply 56.1 ¶ 29.

Moreover, Plaintiff's argument is internally inconsistent, because while she points to internal emails at Brookdale in which Brookdale employees discussed whether it was possible to accommodate Plaintiff, *see* Opp. Br. at 5, these emails merely show that Defendant was engaged in an interactive process to assess Plaintiff's requests and determine whether they could be accommodated. *See* Def.'s Ex. 49, Dkt. No. 113-54. Indeed, if anything, the evidence suggests that it was Plaintiff's *department* (Neurology) that repeatedly raised operational and medical objections to the requested accommodations, and it was the involvement of HR personnel that resulted in the decision to grant Plaintiff's requested physical accommodations. Thus, even if

Brookdale had created a process "only for her," (as to which there is no evidence), such a bespoke process was to Plaintiff's *benefit*, as the objective evidence suggests that her requests would have been denied if left only to her department, while HR employees worked to overcome those objections and ultimately grant Plaintiff's request. Plaintiff's unsupported argument is insufficient to raise a genuine dispute of material fact of discriminatory intent under the ADA or the NYCHRL, particularly where it is inconsistent with the record evidence.[9] *See Scotto*, 143 F.3d at 114.

Defendant is entitled to summary judgment on Plaintiff's claims for disability discrimination because Plaintiff has failed to demonstrate any genuine dispute of material fact that could support an argument that any delay was motivated by discriminatory intent. *See Hamedl*, 557 F. App'x at 70 (summary order) (affirming grant of summary judgment because even if plaintiff's employer's provision of an ergonomically designed chair was "unreasonably delayed," the plaintiff provided no evidence that the delay was "due to some discriminatory intent by his employer").

## II.    Retaliation

Claims for retaliation under the ADA, the NYSHRL, and the NYCHRL are analyzed under the same burden-shifting framework. *See Harriott v. Success Acad. Charter Schs.*, No. 22-

---

[9] The only other potential evidence about what occurred during the time between September 2020 and February 2021 is Plaintiff's claim during her deposition that Lorick "in as much told [Plaintiff] that . . . Brookdale does not allow individuals to use canes or any other assistive device to work." Def.'s Ex. 7, Dkt. No. 113-8 (Jones-Cruz Deposition Tr. 272:4–21, 273:10–15). At the deposition, Plaintiff thought the conversation may have taken place in September 2020, but also that it was after she was presented with a proposed work schedule, which did not occur until February 2021 (when she was also told that she *would* be allowed to use an assistive device). In the Third Amended Complaint, it seems that this conversation was alleged to have occurred in March 2021. In any event, even assuming that the conversation took place at all and that it took place in September 2020, it does not evidence any discriminatory intent on the part of Defendant, and is consistent with the medical and operational concerns initially raised by Plaintiff's department supervisor.

cv-3037 (ER), 2024 WL 757478, at *11 (S.D.N.Y. Feb. 23, 2024); *Getso v. City Univ. of New York*, No. 08-cv-07469 (LAP), 2009 WL 4042848, at *5 (S.D.N.Y. Nov. 18, 2009). To reiterate, Plaintiff must first establish a *prima facie* case of retaliation; if she can, the burden shifts to Defendant to show a legitimate, non-retaliatory rationale. *See Harriot*, 2024 WL 757478, at *11. If Defendant can provide such proof of a non-retaliatory motivation, then in order to avoid summary judgment, Plaintiff must show that the proffered non-retaliatory reason is pretextual. *See id.* at *11, 14; *Stryker*, 2020 WL 5127461, at *14.

To establish a *prima facie* case of retaliation under the ADA[10] the plaintiff must show: (1) she engaged in protected activity; (2) the defendant was aware of this activity; (3) the defendant took an adverse employment action against her; and (4) a causal connection exists between the alleged adverse action and the protected activity. *Getso*, 2009 WL 4042848, at *5 (quoting *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002)).

Retaliation claims under the NYCHRL and NYSHRL[11] are subject to "a similar but slightly broader standard: a plaintiff claiming retaliation must demonstrate 'that she took an action opposing her employer's discrimination and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action.'" *Qorrolli v.*

---

[10] The procedural posture of Plaintiff's case is somewhat odd, in that at the time of the alleged retaliatory conduct, the only discrimination alleged in her lawsuit against Brookdale was racial discrimination. Those claims were dismissed on March 14, 2021 and leave to replead was subsequently denied as futile. The present disability discrimination claims were not filed until November 24, 2022, long after the last allegedly retaliatory action. Nonetheless, the Court will analyze Plaintiff's retaliation claims under the standards applied to disability-based retaliation, as that standard is somewhat more favorable to Plaintiff.

[11] For retaliation claims that accrued on or after October 11, 2019, "the standard for NYSHRL aligns with the NYCHRL standard." *Arazi*, 2022 WL 912940, at *16; *see also Puris v. TikTok Inc.*, No. 24-cv-944 (DLC), 2025 WL 343905, at *8 (S.D.N.Y. Jan. 30, 2025) (noting that the same standard applies to NYCHRL and NYSHRL retaliation claims). Here, Plaintiff's NYSHRL retaliation claims accrued after October 11, 2019, *see, e.g.*, Opp. Br. at 7 (alleging retaliation based on events that took place in 2020 and 2021), and are therefore assessed under the more liberal standard of the NYCHRL.

*Metro. Dental Assocs.*, 124 F.4th 115, 122 (2d Cir. 2024) (quoting *Mihalik*, 715 F.3d at 112); *see also Kulick v. Gordon Prop. Grp., LLC*, No. 23-cv-9928 (KPF), 2025 WL 448333, at *13 (S.D.N.Y. Feb. 7, 2025) ("The elements of a *prima facie* case of retaliation under the NYCHRL (and the post-amendment NYSHRL) are identical to those under Title VII, 'except that the plaintiff need not prove any 'adverse' employment action; instead, [she] must prove that something happened that would be reasonably likely to deter a person from engaging in protected activity.'" (alteration in original) (quoting *Leon v. Columbia Univ. Med. Ctr.*, No. 11-cv-08559 (NSR), 2013 WL 6669415, at *12 (S.D.N.Y. Dec. 17, 2013))); *Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 159 (2d Cir. 1999) (holding that the same framework applies for analyzing retaliation claims under Title VII and the ADA).

Defendant argues that Plaintiff is unable to make out a *prima facie* case of retaliation under the ADA, the NYSHRL, or the NYCHRL because (1) as to the individuals that Plaintiff alleged made remarks showing retaliatory intent, Plaintiff was unable to establish that they knew Plaintiff had initiated the instant action against Brookdale or that they were the actual decisionmakers with respect to her accommodations request; (2) Plaintiff did not suffer an adverse employment action; and (3) there is no causal connection between Plaintiff's protected activity and any purported adverse actions.  Def.'s Br. at 19–22, 24–25.

Plaintiff, in turn, argues that Defendant engaged in retaliation because Defendant "refused to approve Plaintiff's request for reasonable accommodation for over one year," and "Plaintiff lost the money she would have made for that one-year period" (approximately $110,000).  Opp. Br. at 7.  Defendant is entitled to summary judgment on this claim because Plaintiff cannot establish a *prima facie* case of retaliation under the ADA or under the broader standard for claims brought under the NYCHRL and NYSHRL.

24

Turning first to Plaintiff's ADA retaliation claim, Plaintiff cannot make a *prima facie* case for retaliation because she has failed to muster any facts showing that she suffered an adverse employment action.[12]  In the context of ADA retaliation claims, "[a]n adverse action is 'any action that could well dissuade a reasonable worker from making or supporting a charge of discrimination.'"  *Sharikov v. Philips Med. Sys. MR, Inc.*, 103 F.4th 159, 170 (2d Cir. 2024) (quoting *Sarno*, 183 F.3d 155 at 159).

Plaintiff argues that Defendant's delay of her return to work by failing to approve her reasonable accommodations request was an adverse action that resulted in her loss of her salary of $110,000 for one year, *see* Opp. Br. at 7, but this premise is inaccurate.  For all of the reasons discussed above, the evidence shows—and Plaintiff is unable to muster any evidence to counter—that Defendant granted both of her requests for reasonable accommodations in well under a year:  The request made in September 2020 was approved in February 2021, and the request made in April 2021 was approved in July 2021 (other than the request for Plaintiff's preferred schedule, which was unreasonable and unrelated to her disability).  Plaintiff's inability to return to work immediately following those decisions was almost entirely her own doing.  Plaintiff has failed to raise any arguments or demonstrate any facts showing unreasonable delay; as such, the time taken to decide on Plaintiff's requests was not reasonably likely to deter Plaintiff from "making or supporting a charge of discrimination."  *Sharikov*, 103 F.4th at 170.  Thus, under the ADA, Plaintiff has failed to show an adverse action.

---

[12] Defendant does not dispute that Plaintiff engaged in a protected activity.  *See* Def.'s Br. at 19. The first prong of Plaintiff's *prima facie* case is therefore uncontested.  As to the second prong, Defendant argues that Plaintiff has not satisfied this prong because she has not established that the individuals who allegedly made remarks with retaliatory intent had knowledge of the instant action.  *See id*.  Plaintiff does not address this argument in her opposition brief.  However, it is not necessary to address this prong because Plaintiff cannot show that she suffered an adverse employment action and thus cannot make a *prima facie* case for retaliation under the ADA.

Second, even if the delay did constitute an adverse action, Plaintiff did not show any causal connection between the delay and her protected activities (maintaining the instant lawsuit, requesting reasonable accommodations, and filing an EEOC case). Plaintiff raised in her Rule 56.1 statement three instances to support of her claims of retaliation—statements made by an unspecified person ("Ms. Ganesh," per the Third Amended Complaint), Gonzalez, and Lorick, as explained above. *See supra*, Section II(C)(iii). With respect to Plaintiff's deposition testimony that someone from HR (likely "Ganesh") called her a "difficult person," *see* Def.'s Ex. 7, Dkt. No. 113-8 (Jones-Cruz Deposition Tr. 319:7–22), this vague comment is simply insufficient to tie any of her protected activities to the delay in approving her requested accommodations. Further, with respect to the alleged statements by Gonzalez and Lorick, Plaintiff has submitted no evidence of when those statements were made. Even if the Court were to consider the rough timelines Plaintiff included in her unverified Third Amended Complaint—in which Plaintiff alleged that Gonzalez made her statements sometime on or after February 28, 2021, and Lorick made her statements sometime on or after March 17, 2021—both statements were made *after* Brookdale granted all of Plaintiff's September 2020 requests for physical accommodation, and before Plaintiff made her second set of requests in April 2021. Moreover, as Plaintiff admitted, though HR was involved in the process of coordinating and engaging with Plaintiff and her department regarding Plaintiff's requests, Brookdale's Department of Neurology (not HR) would have made the final decision of whether to grant Plaintiff's accommodations request. *See* Pl.'s Reply 56.1 ¶¶ 29–35. Thus, Gonzalez and Lorick (and indeed, HR generally) were *not* the ultimate decisionmakers regarding Plaintiff's requests, and, as noted above, the evidence suggests that the initial resistance to Plaintiff's requested accommodations came from the Neurology Department and that HR's involvement was, if anything, favorable to Plaintiff and the

26

ultimate granting of her requests.  In light of this, Plaintiff is unable to demonstrate any causal connection between the delay and Plaintiff's protected activities of filing or maintaining her lawsuit, requesting accommodations, or filing an EEOC case.

Plaintiff's retaliation claims under the more lenient standard of the NYSHRL and NYCHRL fail for substantially similar reasons.  To succeed on a retaliation claim under the NYSHRL and NYCHRL, a plaintiff must make the same prima facie showing as required under the ADA "'except that the plaintiff need not prove any 'adverse' employment action.'" *Kulick,* 2025 WL 448333, at *13 (quoting *Leon,* 2013 WL 6669415 at *12).  Rather, the plaintiff "must prove that something happened that would be reasonably likely to deter a person from engaging in protected activity." *Id.* The protected activity need not be the "but-for" cause of the retaliatory action; rather, "the NYCHRL only requires that the protected activity be a 'motivating factor.'" *Lee v. Riverbay Corp.*, 751 F. Supp. 3d 259, 284 (S.D.N.Y. 2024) (quoting *Mihalik,* 715 F.3d 102 at 116).

As discussed *supra,* Plaintiff provides no evidence that Defendant took actions that were "reasonably likely to deter [her] from engaging in a protected activity." *Kulick,* 2025 WL 448333, at *13.  Plaintiff argues that she engaged in the protected activities of filing a lawsuit, requesting reasonable accommodations, and filing an EEOC claim and that Defendant retaliated against her by "refus[ing] to approve Plaintiff's request for reasonable accommodation for over one year."  Opp. Br. At 7.[13]  However, the record shows that Defendant granted each of

---

[13] Plaintiff's deposition testimony discusses additional statements that may be relevant to Plaintiff's NYCHRL retaliation claim. *See, e.g.*, Def.'s Ex. 7, Dkt. No. 113-8 (Jones-Cruz Deposition Tr. 274:15–22, 319:7–22).  While Plaintiff makes glancing reference to these statements in her brief, *see* Opp. Br. at 7, she does not expressly argue that these statements were themselves acts of retaliation as opposed to evidence of causality or discriminatory intent relevant to later stages of the inquiry.  The Court thus is not required to address those statements here because "[t]he Court [may] decline to make plaintiff['s] arguments for [her]." *McCalla v. City of New York*, No. 15-cv-8002 (LAK) (AJP), 2017 WL 3601182, at *73 n. 138 (S.D.N.Y. Aug. 14, 2017), *report and recommendation adopted*, No. 15-cv-8002 (LAK), 2017

Plaintiff's physical accommodation requests in well under a year. *See* Pl.'s Reply 56.1 ¶¶. 137,

153 (September 21, 2020 requested granted on February 11, 2021); *id.* at 181, 198–99 (April 15,

2021 request granted on July 9, 2021). The alleged year-long delay in granting Plaintiff's

request thus cannot be the basis for Plaintiff's NYSHRL and NYCHRL retaliation claims

because such a delay did not occur.

In addition, Plaintiff points to no evidence that retaliatory intent was a "motivating

factor" in the delay of Plaintiff's return to work. *Lee*, 751 F. Supp. 3d at 284. The record shows

that Plaintiff's delay in returning to work once her accommodation requests were granted was of

her own making. *See, e.g.*, Pl.'s Reply 56.1 ¶¶ 155, 166, 174, 201-204. Plaintiff thus cannot

attribute any delay in her return to work to retaliatory intent on behalf of Defendant.

Accordingly, Plaintiff does not put forth facts sufficient to sustain a claim for retaliation under

the NYSHRL and NYCHRL. Plaintiff therefore cannot make out a *prima facie* case of

retaliation under the ADA, NYCHRL, or NYSHRL, and the Court grants Defendant's motion for

summary judgment as to Plaintiff's retaliation claims..[14]

---

WL 4277182 (S.D.N.Y. Sept. 22, 2017). However, even if the Court were to assume that Plaintiff is
alleging these comments as specific acts of retaliation, they would not be sufficient to satisfy this element
because Plaintiff concedes the speakers (all of whom deny making the statements) were not
decisionmakers on her accommodation requests and in any event "stray remarks, even if made by a
decisionmaker, do not constitute sufficient evidence" of discrimination or retaliation, *Danzer v. Norden
Sys., Inc.*, 151 F.3d 50, 56 (2d Cir. 1998).

[14] Even if Plaintiff could establish a *prima facie* case for retaliation, her claim would still fail to
survive summary judgment because Defendant would be able to establish a legitimate, non-retaliatory
reason for any delay in approving Plaintiff's requests, with undisputed facts. Defendant established it
reasonably engaged in an internal process of determining whether it could accommodate Plaintiff's
requests, and that Plaintiff was to blame for much of the time that passed between September 2020 and
August 2021. "During the final stage of the burden shifting framework, the plaintiff must show that
retaliation was a but-for cause of the adverse employment action." *Joseph v. Owens & Minor Distrib.,
Inc.*, 5 F. Supp. 3d 295, 319 (E.D.N.Y. 2014) (internal marks omitted) (quoting *Dall v. St. Catherine of
Siena Med. Ctr.*, 966 F. Supp. 2d 167, 195–96 (E.D.N.Y. 2013). The NYCHRL has a broader standard,
but a plaintiff must still establish "that there was a causal connection . . . [and] that a defendant's
legitimate reason . . . was pretextual or 'motivated at least in part by an impermissible motive.'" *Id.* at
322 (quoting *Weber v. City of New York*, 973 F. Supp. 2d 227, 273 (E.D.N.Y. 2013)). Plaintiff has simply

## CONCLUSION

Defendant's motion for summary judgment is **GRANTED** in its entirety, and the case is

**DISMISSED**.  The Clerk of Court is directed to terminate Dkt. No. 112 and to CLOSE the case.


Dated: June 6, 2025
       New York, New York

SO ORDERED.

MARGARET M. GARNETT
United States District Judge

---

not carried her burden of showing that Brookdale's rationale is pretextual.  She continually argues that Brookdale "approved Plaintiff's return to work after one year."  Opp. Br. at 7.  For reasons explained exhaustively above, this is untrue.  The record shows that Defendant granted Plaintiff's first request within about four months, and her second request within about three months.  Following (and at times, during) those two periods, Plaintiff chose not to return to work or failed to secure the necessary privileges and complete the necessary administrative work to return.  She has not shown any causal connection between the delay and her protected activity.  *See Shih v. JPMorgan Chase Bank, N.A.*, No. 10-cv-9020 (JGK), 2013 WL 842716, at *8 (S.D.N.Y. Mar. 7, 2013) ("[N]o rational jury could find that any of [the defendant's] actions were taken in retaliation against the plaintiff for engaging in protected activity.").